SINGERHOUSE, Administrator, Respondent, vs. MINNESOTA FARMERS MUTUAL CASUALTY INSURANCE COMPANY, Appellant.

*January 11—February 7, 1950.*

For the appellant there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *W. T. Doar*.

For the respondent there was a brief by *Slocumb & Bundy* of Menomonie, and oral argument by *Ira O. Slocumb* and *R. E. Bundy*.

BROADFOOT, J. The accident out of which this action arose occurred on State Trunk Highway 25 in the town of Dunn, Dunn county, Wisconsin, at a point where an east-and-west town road intersects said highway. The accident happened during the afternoon of March 14, 1948. Just prior to the accident one Grant Flick was driving a truck northerly on Highway 25. The defendant is Flick's insurer. Flick was followed by one Gordon Debee, who was driving his car in the same direction. The accident happened when Debee attempted to pass the truck driven by Flick. The facts as to what happened just prior to and at the time of the accident are in dispute. Because there will have to be a new trial of this action further comment on the facts would be improper.

A special verdict consisting of six questions was submitted to the jury. The jury found that Grant Flick was causally negligent (a) as to his position on the roadway prior to reaching the intersection; (b) as to his position on the roadway as he reached the intersection and prepared to turn to his right; and (c) in deviating from the traffic lane in which he was operating without first ascertaining that such movement could be made with safety to other vehicles approaching from the rear.

Questions 3 and 4 referred to the negligence of Gordon Debee, and were as follows:

"Question 3. At or immediately prior to the time of the collision, was the deceased, Gordon Debee in the manner of operating his automobile negligent in any of the following particulars:

"(a) In failing to give audible warning with his warning device before attempting to pass the Flick truck?

"Answer 'Yes.' (Answered by the court.)

"(b) In attempting to pass the Flick truck to the right?

"Answer ————.

"Jurors dissenting: ————————————————

"(c) In attempting to pass the Flick truck at a highway intersection?

"Answer ————.

"Jurors dissenting: ————————————————

"Question 4. If you have answered one or more of the subdivisions of question 3 'Yes,' then answer the corresponding subdivision or subdivisions of this question:

"Was such negligence a proximate cause of the collision and of the resulting injuries to and death of Gordon Debee and damage to his automobile with respect to:.

"(a) In failing to give audible warning with his warning device before attempting to pass the Flick truck?

"Answer ————.

"Jurors dissenting: ————————————————

"(b) In attempting to pass the Flick truck to the right?

"Answer ————.

"Jurors dissenting: ————————————————

"(c) In attempting to pass the Flick truck at a highway intersection?

"Answer ————.

"Jurors dissenting: ————————————————

————————————————————————————————————"

Subdivision (a) of question 3 was answered "Yes" by the court. Subdivisions (b) and (c) of question 3 were each

answered "No" by the jury. The jury did not answer any subdivision of question 4. Question 5 of the special verdict was the usual question as to comparative negligence. At some point in the jury's deliberation it attributed seventy-six per cent of the total negligence to Grant Flick and twenty-four per cent to Gordon Debee, one juror, James Berger, dissenting and indicating that fifty per cent of the negligence should be attributed to each driver. Before returning the verdict the jury asked the court for further instructions to explain the question upon which they desired further information. The foreman read question 5 to the court and then stated the question as follows:

"Now, we have the questions, question 2, question 3 and the question is this: The fact that the (a) subdivision of question 3 was answered by the court, are we to consider that in arriving at the percentage of negligence, or are we to consider the other two questions only?"

The Court: "In answering question 5, you are only to consider the answers to the subdivisions of questions 2 and 4. If you have answered one or more of the subdivisions of question 2 'Yes' and have also answered one or more of the subdivisions of question 4 'Yes,' then you are required to answer question 5. If none of the subdivisions of question 2 or question 4 have been answered 'Yes,' then you are not required to answer question 5 at all. Does that answer your question?"

Foreman: "Yes."

Later the jury delivered its verdict to the court without answering subdivision (a) of question 4 and with its answers to question 5 deleted by several lines drawn through the same with ink. The court received and filed the verdict in that condition. Upon motions after verdict the court answered subdivision (a) of question 4 "No" and ordered judgment on the verdict "as so completed and amended."

It is apparent that the jury was confused by the fact that the court had answered subdivision (a) of question 3 of the special verdict. This confusion was not overcome by the

added instructions of the court. To receive and file the verdict in the form in which it was presented to the court was error. The insertion of the answer to subdivision (a) of question 4 of the verdict by the court was an invasion of the province of the jury. The court should have instructed the jury that it was its duty to answer that question, and had them return to the juryroom for that purpose and to consider the effect of their answer to that question upon question 5.

Other assignments of error were raised by the appellant. In view of the fact that a new trial is necessary we do not deem it necessary to determine the same.

*By the Court.*—Judgment reversed and cause remanded for a new trial.